IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff/Respondent,

vs.

                            Case No. 1:21-CV-00170-WJ-KRS

FIDAL ABDELJAWAD,                   1:15-CR-03394-WJ

       Defendant/Movant.

## MEMORANDUM OPINION AND ORDER
## OVERRULING DEFENDANT/MOVANT'S OBJECTIONS AND ADOPTING
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") (CV Doc. 20) and Defendant/Movant Fidal Abdeljawad's Objections to Proposed Findings and Recommended Disposition (CV Doc. 23). In a thorough and well-reasoned PFRD, the Magistrate Judge recommended that "1. Mr. Abdeljawad's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, (CV Doc. 1) be Denied; 2. This matter be Dismissed with Prejudice; and 3. A certificate of appealability not be issued." (CV Doc. 20 at 34). The Court overrules Defendant/Movant Abdeljawad's Objections, adopts the Magistrate Judge's PFRD, and dismisses Movant Fidal Abdeljawad's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 1; CR Doc. 187) with prejudice.

## 1. Factual and Procedural Background

Fidal Abdeljawad was indicted by a Grand Jury on September 22, 2015 on one count of conspiring to possess and distribute synthetic cannabinoids in violation of 21 U.S.C. § 846, two counts of possession of synthetic cannabinoids with the intent to distribute in violation of 21 U.S.C.

§ 841(a)(1), and one count of attempted possession of synthetic cannabinoids in violation of 21 U.S.C. § 846.  (CR Doc. 29).  Mr. Abdeljawad was convicted on all counts by a twelve-person jury in May, 2017.  (CR Doc. 107).  He was sentenced to concurrent terms of 132 months imprisonment as to each of the four counts on July 19, 2018. (CR Doc. 164, 165).  Mr. Abdeljawad appealed to the United States Court of Appeals for the Tenth Circuit, raising a single issue regarding calculation of the drug equivalency of synthetic cannabinoids under the U.S. Sentencing Guidelines.  The Tenth Circuit affirmed his conviction and sentence.  (CR Doc. 178).  Mr. Abdeljawad was represented by four attorneys over the course of the district and appellate court proceedings.

Movant Abdeljawad filed his Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody on June 18, 2021.  (CV Doc. 1; CR Doc. 187).  The United States filed a Response to the Motion on June 18, 2021.  (CV Doc. 11).  Movant Abdeljawad filed his Reply on September 16, 2021.  (CV Doc. 17).  In his Motion, Movant Abdeljawad asserts his counsel was ineffective in representing him:

(1) by failing to investigate, seek discovery, and move to suppress evidence related to two search warrants issued by the New Mexico state courts in May 2014;

(2) by failing to move to suppress evidence seized pursuant to a federal wiretap warrant authorized in December 2014;

(3) by failing to seek discovery relevant to the testimony of the government's witness, co-conspirator Ramzi Kahala, and alleged supplier, Imad Al-Qattawi[1]; and

---

[1] The filings in this case refer to the supplier both as Mr. Al-Qattawi and as Mr. Qattawi. See, e.g., Doc. 23 at 5).  Mr. Qattawi was a fugitive at the time of Mr. Abdeljawad's trial but was subsequently convicted on federal drug charges in the Middle District of Florida.  (CV Doc. 1-10 at 26-50, Doc. 1-11 at 1-50, Doc. 1-12 at 1-25 (transcript of Mr. Qattawi's sentencing hearing)).

(4) by failing to request DEA reports regarding the net weight of synthetic marijuana attributable to Mr. Abdeljawad.

(CV Doc. 1 at 1-12; CR Doc. 187 at 1-12).  The § 2255 Motion is supported by a February 25, 2021 declaration with exhibits by a California private investigator, Efren Lapuz. (CV Doc. 1-2 at 1-21).  Mr. Lapuz opines that there were a number of evidentiary avenues that could have been explored and might have produced documents or information material to Mr. Abdeljawad's case. (CV Doc. 1-2 through 1-13).  He concludes that, in his opinion, if trial counsel had developed additional evidentiary materials, it "would have changed the trial counsel's pretrial and trial strategy."  (CV Doc. 1-2 at 15).

The Court referred the Motion to Magistrate Judge Kevin R. Sweazea to make proposed findings and a recommended decision.  (CV Doc. 19).  After concluding that an evidentiary hearing was unnecessary under 28 U.S.C. § 2255(b) and *Machibroda v. United States,* 368 U.S. 487, 495 (1962), the Magistrate Judge entered his Proposed Findings and Recommended Disposition.  (CV Doc. 20).  In the PFRD, the Magistrate Judge made his recommendations that Mr. Abdeljawad's Motion be denied, that the matter be dismissed with prejudice, and that a certificate of appealability not issue.  (CV Doc. 20 at 34).

Movant Abdeljawad filed Defendant/Movant Fidal Abdeljawad's Objections to Proposed Findings and Recommended Disposition.  (CV Doc. 23).  Mr. Abdeljawad raises five objections to the PFRD:

> 1.   The Court should reject the Magistrate's Recommended Disposition with respect to the state court warrants and order a *Franks* hearing instead;
> 2.  The Court should reject the Magistrate's Recommended Disposition with respect to the wiretap warrant.;
> 3.  The Court should reject the Magistrate's Recommended Disposition with respect to the *Brady* Violations;
> 4.  The Court should reject the Magistrate's Recommended Disposition and allow Mr. Abdeljawad to obtain discovery that is relevant to the

3

fairness of his sentence; and

5. The Court should order the production of discovery that is material to Mr. Abdeljawad's case.

(CV Doc. 23 at 16, 20, 21, 23).  The United States responds that the Objections simply reiterate the allegations and arguments asserted in his Motion and do not raise any issue with the facts, law, or analysis set out in the Magistrate Judge's PFRD.  (CV Doc. 24 at 1).  The Court finds no error in the PFRD, overrules Defendant/Movant's Objections, and adopts the Magistrate Judge's PFRD.

**2.  Legal Standards Governing Objections to the Magistrate Judge's Proposed Findings and Recommended Disposition**

Under 28 U.S.C. § 636(b)(1)(C), the Court conducts a *de novo* review of any objections to the Magistrate Judge's PFRD.  To resolve an objection to the PFRD, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  A party's objections to the PFRD must be "both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  An objection must be sufficient to focus the Court on the factual and legal issues actually in dispute.  *Id.* at 1060.  Issues raised for the first time in an objection to the PFRD are deemed waived.  *Marshall v. Chater,* 75 F.3d 1421, 1426 (10th Cir. 1996). The Court finds that Movant Abdeljawad's Objections were timely filed.  The Court also finds that Mr. Abdeljawad's objections are sufficiently specific to preserve the factual and legal issues for *de novo* review by the Court.

### 3.  <u>Legal Standards for Ineffective Assistance of Counsel</u>

Mr. Abdeljawad objects to the Magistrate Judge's recommendation that his claims of ineffective assistance of counsel be denied.  In order to establish a claim of ineffective assistance of counsel, a movant must demonstrate: (1) that his counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense.  *Strickland v. Washington,* 466 U.S. 668, 687 (1984).  To establish deficient performance, the challenger must show that counsel's representation fell below an objective standard of reasonableness.  *Id.* at 688.

To establish prejudice, the movant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  *Id.* at 694. The likelihood of a different result must be substantial, not just conceivable.  *Harrington v. Richter,* 562 U.S. 86, 112 (2011).  Rather than using the *Strickland* standard for the prejudice prong, Defendant urges the Court to apply a standard of whether Defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence" based on *Kyles v. Whitley,* 514 U.S. 419, 434 (1995). (Doc. 23 at 16).  However, *Kyles* dealt with suppression of exculpatory evidence in violation of *Brady v. Maryland*, not with ineffective assistance of counsel.  Therefore, the Court rejects Defendant's invitation to apply a different standard and will analyze Defendant's objections under *Strickland*.

### 4.  <u>*De Novo* Review of Movant Abdeljawad's Objections</u>

#### A.  **State Warrants and a *Franks* Hearing:**

First, Movant Abdeljawad contends that his counsel was ineffective in failing to move to suppress evidence related to two search warrants issued by the New Mexico state courts in May 2014.  Mr. Abdeljawad's objection does not directly challenge the Magistrate Judge's conclusion that counsel was not ineffective in failing to move to suppress the evidence but, instead, objects to

the Magistrate Judge's determination that a motion to suppress would have been meritless. He claims that the affidavits in support of the two search warrants did not provide a substantial basis for concluding that probable cause existed to search Mr. Abdeljawad's business, home, and vehicles for evidence of criminal activity.  (CV Doc. 23 at 16).  Mr. Abdeljawad asks the Court to reject the Magistrate Judge's findings that the affidavits were not deficient and did not contain deliberate falsehoods or a reckless disregard for the truth and urges the Court to order a hearing under *Franks v. Delaware*, 438 U.S. 154 (1978).  (CV Doc. 23 at 16-20).

A defendant seeking to suppress evidence obtained through a search with a warrant bears the initial burden of establishing that the search was illegal. *United States v. Krueger*, 809 F.3d 1109, 1113 (10th Cir. 2015). The Supreme Court has expressed a "strong preference" for warrants and has accordingly given the issuing judge's determinations of probable cause "great deference." *United States v. Leon*, 468 U.S. 897, 914 (1984). However, courts will not defer to a warrant based on an affidavit that does not "provide the magistrate with a substantial basis for determining the existence of probable cause." *Id.* at 915 (citation omitted).

To determine whether a search warrant is supported by probable cause, the Court must assess whether based on the totality of the circumstances articulated in the affidavit "the [issuing judge] had a substantial basis for concluding that probable cause existed." *United States v. Basham*, 268 F.3d 1199, 1203 (10th Cir. 2001) (citation omitted). "Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* Probable cause also requires "a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990).

6

There is a presumption of validity with respect to an affidavit supporting a search warrant. Under *Franks v. Delaware*, a defendant may challenge a facially sufficient affidavit supporting a search warrant on the basis that the police knowingly, intentionally, or recklessly included false information.  438 U.S. at 155–56.  A defendant is not entitled to a *Franks* hearing unless he makes a "substantial showing that the affidavit contains intentional or reckless false statements and if the affidavit, purged of its falsities, would not be sufficient to support a finding of probable cause."  438 U.S. at 155-56.  This prohibition likewise applies to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause." *United States v. Basham*, 268 F.3d 1199, 1204 (10th Cir.2001), citing *Franks*, 438 U.S. at 171–72; *Stewart v. Donges*, 915 F.2d 572, 581-83 (10th Cir. 1990).

The defendant must show that the affiant knowingly falsified information or recklessly disregarded the truth, not simply that information was omitted from the affidavit or that the information wasn't completely true.  *U.S. v. Owens*, 882 F.2d 1493, 1498-99 (10th Cir. 1989); *U.S. v. Green*, 175 F.3d 822, 828 (10th Cir. 1999) (noting that the *Franks* standard applies to affidavits in support of Title III intercepts).  The test is whether the affidavit supports a finding of probable cause without the allegedly false information.  *U.S. v. Morehead*, 959 F.2d 1489, 1498 (10th Cir.) on reh'g sub nom. *United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992).

In this case, the two search warrants were validly issued based on probable cause.  The warrants sufficiently described the places to be searched and the property to be seized and were issued by New Mexico state district court judges.  (CV Doc. 1-2 at 35-36; CV Doc. 1-3 at 10-12, 15, 42-44).  The warrants were supported by very lengthy sworn affidavits of DEA Task Force Officer Jason Franklin and DEA Special Agent Jennifer Fallon.  Officer Franklin's affidavit in support of the search warrant for Sean's Smoke Shop states that Officer Franklin personally

participated in the investigation of drug trafficking at Sean's Smoke Shop by Defendant Abdeljawad and others and sets out detailed information regarding Mr. Abdeljawad's selling of synthetic cannabinoids.  (CV Doc. 1-2 at 35-50 and Doc. 1-3 at 1-12).

Special Agent Fallon's affidavit in support of the warrants for Mr. Abdeljawad's house and vehicle included Officer Franklin's information and added specific details from the search of Sean's Smoke Shop resulting in seizure of over 100 packages of synthetic cannabinoids and bundles of cash.  The affidavit also added that there was a box containing black mylar bags with pink stickers on them, believed to contain synthetic cannabinoids, in plain sight in Mr. Abdeljawad's vehicle in front of his house.  (CV Doc. 1-3 at 17-44).  The Magistrate Judge properly found that the affidavits set forth sufficient information to support a finding of probable cause and the warrants are presumed to be valid.  *United States v. Corral-Corral*, 899 F.2d at 937.

To overcome the presumption of validity of the warrants, Defendant Abdeljawad argues that the affidavits vitiate probable cause because they rely on a confidential source who used third parties to make purchases that were not controlled by the agents, did not provide sufficient information about the credibility and reliability of the confidential source, and did not advise the judge that the confidential source had been admonished and deactivated.  (CV Doc. 23 at 17-19).  However, the affidavits contained sufficient information to corroborate the confidential source's claims and to allow the state judge to infer the likelihood of sales of synthetic cannabinoids inside Mr. Abdeljawad's business even without reference to the confidential source.  (CV Doc. 20 at 14-15, Doc. 1-2 at 37-50, Doc. 1-3 at 18-41).    Further, the confidential source was not deactivated until after issuance of the warrants.  (CV Doc. 20 at 16). The affidavits provided competent information to establish probable cause and did not contain deliberate falsehoods or a reckless disregard for the truth. *U.S. v. Owens*, 882 F.2d at 1498-99.   The Magistrate Judge properly found

that the affidavits did not vitiate probable cause and a *Franks* hearing was not warranted in this case.  *United States v. Basham*, 268 F.3d at 1204.

Last, as concluded by the Magistrate Judge, even if the warrants had not been supported by probable cause or contained deliberate falsehoods that vitiated probable cause, the officers who seized the evidence were acting with objective good faith and the good faith exception to the exclusionary rule would have precluded suppression of the seized evidence.  *United States v. Leon,* 486 U.S. 897, 922 (1984).  Defendant Abdeljawad's counsel was not ineffective in failing to pursue meritless motions to suppress the evidence.  *Strickland v. Washington,* 466 U.S. at 688.  Therefore, the Court overrules Defendant's first objection to the Magistrate Judge's PFRD.

### B.  Federal Wiretap Warrant:

Defendant Abdeljawad also claimed that his counsel was ineffective in failing to move to suppress evidence seized pursuant to a federal wiretap warrant authorized in December 2014.  The Magistrate Judge concluded that the federal wiretap warrant was also supported by probable cause and valid.  (CV Doc. 20 at 20-26).  In his objections, Mr. Abdeljawad now contends that the Court should reject the Magistrate Judge's recommendation and conclude that the federal wiretap warrant was also invalid.  (CV Doc. 23 at 20-21).

The federal wiretap warrant was initially authorized by United States District Judge Martha Vazquez and was continued by United States District Judge M. Christina Armijo.  (CV Doc. 1-6 at 29-38, Doc. 1-9 at 36-45). Defendant Abdeljawad argues that the evidence seized under the wiretap warrant was fruit of the poisonous tree because the federal wiretap warrant was based on the invalid state warrants and relied heavily on information provided by the confidential source. (CV Doc. 23 at 20-21). The Court is not persuaded by Defendant's contentions.

First, the Court has already found that the state court warrants were supported by probable cause and were valid.  Second, the affidavit of FBI Special Agent Hartz, given in support of the federal wiretap warrant, provided substantial additional information of telephone calls between Mr. Abdeljawad and his supplier, Mr. Qattawi, sufficient to support probable cause for the issuance of the federal wiretap warrant independent of the confidential source. (CV Doc. 1-5 at 27-35).[2] Last, the affidavit of Special Agent Hartz also provided information about the confidential source sufficient to allow the issuing judge to determine the reliability of the confidential source. (CV Doc. 1-5 at 14-18).

The federal wiretap warrant was fully supported by sufficient information for the issuing District Judge to determine the existence of probable cause.  Even independent of the state warrant information and the information provided by the confidential source, Special Agent Hartz's testimony regarding the interactions and conversations between Defendant Abdeljawad and Mr. Qattawi established probable cause for the issuance of the federal wiretap warrant. (CV Doc. 1-5 at 1-50, 1-6 at 1-11, 1-8 at 25-50, and 1-9 at 1-35).  Defense counsel's performance was not deficient in failing to move to suppress evidence obtained through the federal wiretap warrant. *Strickland,* 466 U.S. at 688.  The Court overrules Defendant Abdeljawad's second objection to the PFRD.

**C. Brady Violation:**

Third, Mr. Abdeljawad claimed that his counsel was ineffective in failing to request and obtain discovery relevant to two witnesses, Mr. Kahala and Mr. Qattawi in order to allow him to

---

[2] Special Agent Hartz submitted a very comprehensive and detailed 61-page affidavit in support of issuance of the initial federal wiretap warrant and a second 55-page affidavit in support of an application for continuance of the federal wiretap.  (CV Doc. 1-5 at 1-50, Doc. 1-6 at 1-11, Doc. 1-8 at 25-50 and 1-9 at 1-35).

determine whether a *Brady* violation had occurred.  (CV Doc. 1-1 at 25-27).  The Magistrate Judge rejected Defendant Abdeljawad's claim because Mr. Abdeljawad had not established that a *Brady* violation occurred and did not provide any support for allowing discovery to try to find evidence of a *Brady* claim.  (CV Doc. 20 at 26-29).  Defendant Abdeljawad objects to the determination in the PFRD that he failed to establish a *Brady* violation.  (CV Doc. 23 at 21-23).

To establish a *Brady* violation, the defendant must prove that the prosecution suppressed evidence, the evidence was favorable to the defense, and the evidence was material. *See United States v. DeLuna,* 10 F.3d 1529, 1534 (10th Cir.1993). A *Brady* claim fails if the existence of favorable evidence is merely suspected. That the evidence exists must be established by the defendant. *See United States v. Lopez,* 372 F.3d 1207, 1209–11 (10th Cir.2004) (because defendant failed to establish that government had promised leniency to prosecution witnesses, there could be no *Brady* violation in government's failure to turn over documentation of such promises); *United States v. Warren,* 454 F.3d 752, 759 (7th Cir.2006) (defendant failed to establish existence of any document withheld by government, so "his *Brady* claim fails to get off the ground."). And the defendant must also show that the favorable evidence was in the possession or control of the government. *See United States v. Gardner,* 244 F.3d 784, 788 (10th Cir.2001); *Coe v. Bell,* 161 F.3d 320, 344 (6th Cir.1998) ("*Brady* obviously does not apply to information that is not wholly within the control of the prosecution."); *United States v. Maldonado–Rivera,* 489 F.3d 60, 67 (1st Cir.2007) ("For *Brady* to operate, the government not only must know about undisclosed evidence but also must have custody or control of that evidence.").

In this case, the record shows that Defendant's counsel did request and obtain discovery related to witness testimony, including *Brady* and *Giglio* disclosures.  (CV Doc. 11 at 20-21; CR Doc. 95; CR Doc. 96).  To support his contention that additional discovery should be allowed to

try to identify a *Brady* violation, Defendant Abdeljawad relies on the opinions of his private investigator, Mr. Lapuz, who was retained long after his conviction. (CV Doc. 1-2 at 1-16). However, Mr. Lapuz's affidavit sets forth no more than rank speculation that additional discovery of documents from the DEA ***might*** have disclosed a *Brady* violation. (CV Doc. 1-2 at 10-12, ¶¶ 26, 31). Such speculation is insufficient to meet Defendant's burden of showing that the government suppressed any material evidence favorable to the Defendant. *United States v. Lopez,* 372 F.3d at 1209–11. The Magistrate Judge correctly concluded that Defendant failed to establish a *Brady* violation and his counsel was not ineffective by failing to request additional discovery of DEA records. *United States v. Lopez,* 372 F.3d at 1209–11. The Court overrules Mr. Abdeljawad's third objection to the PFRD.

### D. Discovery Relevant to Sentencing Fairness:

Defendant's § 2255 Motion claimed that his counsel was ineffective in failing to investigate and seek discovery to challenge the Probation Office's estimation of the quantity of drugs he was found to be responsible for in relation to his sentencing. (CV Doc. 1-1 at 27-29). Mr. Abdeljawad objects to the Magistrate Judge's rejection of Defendant's request to obtain evidence that Defendant claims would more accurately establish the quantity of synthetic cannabinoids attributable to Mr. Abdeljawad. (CV Doc. 23 at 23, 25). Defendant argues that, in sentencing him, the Court used unreliable testimony of witness Kahala, one of Defendant's co-conspirators, and should, instead, have obtained DEA records relating to Mr. Al-Qattawi, the alleged primary supplier to Defendant Abdeljawad. (CV Doc. 23 at 23-24). Defendant argues that the method of calculating the quantity of synthetic cannabinoids was not reliable and, therefore, resulted in an unfair sentence. (CV Doc. 23 at 23-25).

The Presentence Investigation Report prepared by the Probation Office stated:

> "During the search of Kahala's home on May 7, 2014, DEA agents seized a Fed Ex box containing hundreds of packets of synthetic cannabinoids near the front door of the residence. Kahala testified at trial that he received six such shipments of synthetic cannabinoids from Qattawi for Abdeljawad between February to May 2014.  The gross weight of the FedEx parcel seized on May 7, 2014 was 14.8 kilograms.  The DEA agents removed 2 kilograms of the packets from that box and submitted them to the DEA South Central Laboratory for analysis.  The laboratory examination revealed the packets tested contained an average of 5.185 grams of a mixture containing synthetic cannabinoids.  With a reduction of three kilograms for the weight of the box and external packaging, the contents or packets within the box weighed 12 kilograms, containing 7,000 net grams of smokable synthetic cannabinoids.  Based on Kahala's testimony, this appears to have been a typical shipment of synthetic cannabinoids from Qattawi for Abdeljawad. When multiplied by six shipments, the aggregate quantity of the synthetic cannabinoids supplied by Qattawi (via Kahala) to Abdeljawad from February to May 2014 is estimated to be 42,000 grams.

(CR Doc. 116 at 11, ¶ 23).

Mr. Abdeljawad has exhaustively litigated the calculation of the quantity of synthetic cannabinoids attributable to him at his sentencing, on direct appeal from his sentencing, and in his § 2255 Motion.  (See CR Doc. 178-1; CV Doc. 1).  His arguments have been consistently rejected both in this Court and on appeal.  (CR Doc. 178-1; CV Doc. 20).  The methodology for calculating the weight and purity of synthetic cannabinoids and the drug quantity attributable to Mr. Abdeljawad was properly based on the DEA's analysis of the one seized shipment multiplied by the number of similar shipments Mr. Kahala testified were sent to Mr. Abdeljawad. *See,* PSR, CR Doc. 116 at 11, ¶ 23 and Tenth Circuit affirmance, CR Doc. 178-1.

The Magistrate Judge properly concluded there was no error in the calculation of the quantity of synthetic cannabinoids attributable to Mr. Abdeljawad.  An argument can even be made that, if counsel had obtained additional DEA reports, those records might have been sufficient to include an additional 8 shipments to Mr. Abdeljawad that were indicated in the record but were not attributed to Mr. Abdeljawad in the drug quantity calculation.  (*See* CR Doc. 153, 159; CV

Doc. 20 at 32-33). The inclusion of drug quantities from the additional shipments arguably might have resulted in an even longer sentence. Mr. Abdeljawad's counsel was not ineffective and no prejudice resulted from failing to obtain additional records to challenge the drug quantity. *Harrington v. Richter,* 562 U.S. at 112. Mr. Abdeljawad's fourth objection to the PFRD is overruled.

**E.  Production of Discovery:**

Last, Defendant Abdeljawad contends that the Court should exercise its discretion to order turn-over of discovery and should hold an evidentiary hearing on Defendant's § 2255 motion. Defendant's contention is based on the after-the-fact opinions of Private Investigator Lapuz that additional DEA records should have been obtained by counsel because they might contain information that could have been relevant to Mr. Abdeljawad's conviction. (CV Doc. 23 at 25-27; CV Doc. 1-2 at 10-12). The Court construes Defendant's contention as an objection to the Magistrate Judge's finding that an evidentiary hearing is not warranted and the motion can be resolved on the existing record in this case. (CV Doc. 20 at 33).

Under Rule 8 of the Rules Governing Section 2255 Proceedings, the judge is to determine whether an evidentiary hearing is warranted. A hearing is not warranted if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). The Court concurs with the Magistrate Judge's conclusion that the motion, files, and records of this case conclusively show that Mr. Abdeljawad is entitled to no relief. Therefore, a hearing is not warranted and the Court overrules Defendant's fifth objection to the PFRD.

**5.  Denial of a Certificate of Appealability**

In his Objections, Mr. Abdeljawad argues that the Court should not deprive him of an appeal if necessary. (CV Doc. 23 at 26). The Court construes Defendant's argument as an

objection to the Magistrate Judge's recommended denial of a certificate of appealability. In the PFRD, the Magistrate Judge concluded that "Mr. Abdeljawad has failed to make the requisite showing of denial of a constitutional right" and recommended that the Court deny a certificate of appealability. (CV Doc. 20 at 35).

Rule 11 of the Rules Governing Section 2255 Proceedings provides:

> "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."

In a proceeding under section 2255 before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless the district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from the final order in a proceeding under section 2255. 28 U.S.C. § 2253(c)(1). By statute, a certificate of appealability may issue only if the movant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court finds no merit to Mr. Abdeljawad's Objections and concurs with the Magistrate Judge's conclusion that Mr. Abdeljawad has failed to make a substantial showing of denial of a constitutional right. Therefore, the Court will deny a certificate of appealability under 28 U.S.C. § 2253(c)(2).

**IT IS ORDERED:**

(1) Defendant/Movant Fidal Abdeljawad's Objections to Proposed Findings and Recommended Disposition (CV Doc. 23) are **OVERRULED** and the Magistrate Judge's Proposed Findings and Recommended Disposition (CV Doc. 20) is **ADOPTED**;

(2) Defendant/Movant Fidal Abdeljawad's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (CV Doc. 1; CR Doc. 187) is **DISMISSED WITH PREJUDICE**; and

(3) a Certificate of Appealability is **DENIED**.

WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE